# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT WILLIAMS, | No. 4:19-CV-01436 |
| Plaintiff, | (Judge Brann) |
| v. | |
| J. WETZEL, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### SEPTEMBER 10, 2020

Plaintiff Robert Williams, a prisoner presently confined at the State Correctional Institution at Huntingdon in Huntingdon, Pennsylvania, filed a complaint pursuant to 42 U.S.C. § 1983 alleging an Eighth Amendment medical claim regarding treatment he received at SCI Huntingdon as well as a First Amendment retaliation claim arising from grievances he filed related to his medical care.[1]  Defendants have filed motions to dismiss the complaint, which are now ripe for disposition.[2]  For the reasons that follow, the Court will grant the motions.

## I.   FACTUAL BACKGROUND

Plaintiff is Pennsylvania state prisoner who at all times relevant to the complaint was a prisoner at SCI Huntingdon.[3]  On June 3, 2018, Plaintiff injured

---

[1]  Doc. 1.
[2]  *See* Doc. 17, 20.
[3]  Doc. 1 at 1-2.

himself in the gym while working out. Plaintiff heard something go crack and snap, and Plaintiff grabbed his right shoulder.[4] Plaintiff was sent to the medical unit where he first saw Defendant Nurse Shawn.[5] Defendant Shawn advised Plaintiff that he had a torn bicep.[6] Plaintiff received a sling for his arm and returned to his block.[7]

The next day, Plaintiff was called to the medical department.[8] He was seen by Defendant Dr. Petz, who told Plaintiff that he had a torn tricep and dispensed medication to Plaintiff.[9]

On June 5, 2018, Plaintiff wrote a sick call slip to let the medical department know that his right shoulder was still in pain.[10] On June 6, 2018, Plaintiff went again the medical department and saw Defendant Dr. Kauwnfe; Plaintiff told him that he could not raise his arm above his head.[11] Defendant Kauwnfe told Plaintiff that he has a bad rotator cuff and arthritis, and ordered an x-ray.[12] Plaintiff received the x-ray that afternoon.[13] Plaintiff alleges that he looked over at the computer during the x-ray and saw that a bone was broken in a "v" shape.[14]

---

[4] *Id.* at 5.
[5] *Id.* at 6.
[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

On June 12, 2018, Plaintiff wrote another sick call slip and asked for the results of his x-ray of his shoulder.[15] Plaintiff went to medical and saw Defendant PA Randy Gessel, who showed Plaintiff how his bone was supposed to look.[16] The next day, Plaintiff was informed by Defendant M. Harker that the doctor had ordered prednisone for inflammation and that if his condition did not improve then he would have physical therapy.[17]

Over the next month, Plaintiff wrote numerous sick call slips about his shoulder.[18] He also requested copies of his medical records from non-party Ms. P. Price, but was informed by Defendant K. Jackson that inmates are not permitted to have copies of their medical records.[19] On July 3, 2018, Plaintiff was notified by Defendant M. Harper that physical therapy had been ordered for his shoulder.[20]

On July 20, 2018, Plaintiff wrote a sick call slip asking when he would be able to see an orthopedic doctor and inquired about his physical therapy.[21] On July 26, 2018, Plaintiff spoke with Dr. Petz who asked him who he had seen about his condition; Plaintiff replied Nurse Shawn and Dr. Kauwfne.[22] He was advised that his diagnosis was torn biceps and triceps, a bad rotator cuff, and arthritis.[23] At some

---

[15] *Id.*
[16] *Id.* at 7.
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.* at 8.
[21] *Id.*
[22] *Id.*
[23] *Id.*

point, Plaintiff met with the physical therapist in July.[24]  Plaintiff continued to file sick call slips for the remainder of July 2018.[25]

On August 5 and 6, 2018, Plaintiff went to the medical unit and met with Defendant PA Gessel, who showed Plaintiff the x-ray of his shoulder and explained to him how it should look.[26]  Plaintiff continued to file sick call slips and request further medical attention.[27]  He received various responses, none of which are pertinent to the instant motions.[28]  Plaintiff also requested that his medical records be sent to the Pennsylvania Prison Society; this request was denied.[29]  In addition, his request to see an orthopedic doctor was denied and he was advised that the medical recommendation was physical therapy.[30]  Plaintiff also had to return the sling that he was using for his arm.  Nurse Shawn explained that it was not needed because he had a torn bicep.[31]

In September 2018, Plaintiff continued his pattern of filing sick call slips about his shoulder.[32]  Again, he received various responses, including one from non-party PA Fawn advising that she would put in another request for physical therapy

---

[24] *Id.* at 11.
[25] *Id.* at 8.
[26] *Id.* at 9.
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Id.* at 10.
[31] *Id.*
[32] *Id.*

4

and that Plaintiff should work on arm movement.[33] She also said that she would put in a request for an MRI.[34]

In October and November 2018, Plaintiff saw the physical therapist.[35] Plaintiff and the physical therapist noted that the pain continued.[36] Plaintiff was directed to continue with arm movement.[37]

Plaintiff also had an appointment with non-party Dr. Camacho in Psychiatry.[38] That doctor advised Plaintiff of potential interactions between the medications he was taking for his shoulder and other medications he was taking.[39] He filed a request about his shoulder as well as his medications.[40] He received a response from Defendant Harker advising him that he was scheduled for physical therapy and that all medications have side effects and that he could sign up for sick call.[41]

A few months later, Plaintiff met with non-party Dr. Biance regarding his shoulder.[42] He received a shot of lidocaine and Dr. Biance informed him that he would review his x-rays.[43]

---

[33] *Id.*
[34] *Id.*
[35] *Id.* at 11.
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.*
[42] *Id.* at 12.
[43] *Id.*

On May 8, 2019, Plaintiff was informed that he was going to an orthopedic consult.[44] At the consult, he received new x-rays and was given a cortisone shot.[45] The orthopedic doctor informed him that if the shot did not work in six to eight weeks, he would be evaluated for surgery.[46]

Throughout this time, Plaintiff filed numerous inmate requests and grievances regarding his medical care, which were either received or responded to by Defendants T. Parkes, M. Harker, K. Jackson, D. Kos, and K. Kauffman.[47]

Plaintiff alleges that he is again being considered for parole, and the potential surgery on his shoulder may delay his parole.[48] This, he alleges, is retaliation for filing the grievances about his medical care.[49] Plaintiff does not want to receive surgery while in the custody of the Department of Corrections, as he would prefer to have the surgery done by doctors that he trusts in Philadelphia.[50]

I should note that there are no factual allegations against Defendant J. Wetzel in the complaint.[51]

---

[44] *Id.*
[45] *Id.* at 13.
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*
[51] *See generally* Doc. 1.

## II. STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim.[52] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[53] The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[54]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[55] The court need not accept unsupported inferences,[56] nor legal conclusions

---

[52] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[53] *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).
[54] *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).
[55] *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).
[56] *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

cast as factual allegations.[57]  Legal conclusions without factual support are not entitled to the assumption of truth.[58]

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible.  This is a context-specific task, for which the court should be guided by its judicial experience.  The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[59]  A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[60]  The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[61]

## III. DISCUSSION

Plaintiff has brought his First and Eighth Amendment constitutional claims pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

---

[57] *Twombly*, 550 U.S. at 556.
[58] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).
[59] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[60] *Id.*
[61] *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law."[62]  "The first step in evaluating a section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'"[63]

In order to establish a First Amendment retaliation claim, a plaintiff must prove that (1) his conduct was constitutionally protected, (2) he suffered an adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him.[64]

Here, Plaintiff cannot establish that he suffered an adverse action from prison officials.  An adverse action is one "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights."[65]  An adverse consequence "need not be great in order to be actionable," rather, it need only be "more than *de minimis*."[66] Plaintiff's alleged "adverse action" is that he may have to have orthopedic surgery.

---

[62] *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).
[63] *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).
[64] *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).
[65] *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotation marks omitted).
[66] *Watson*, 834 F.3d at 423 (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)).

Although he is concerned that this will extend his time in incarceration before he is paroled, he makes no allegations that he has either been granted parole or, more significantly, that it has been delayed due to any potential surgery. As such, Plaintiff has failed to state a First Amendment retaliation claim.

As for Plaintiff's Eighth Amendment medical claim, "[i]n order to state a cognizable [medical] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."[67]  "[T]o succeed under these principles, plaintiffs must demonstrate (1) that the defendants were deliberately indifferent to their medical needs and (2) that those needs were serious."[68] This standard affords considerable latitude for medical professionals within a prison to diagnose and treat the medical problems of inmate patients.[69]  Some of the more common situations in which "deliberate indifference" has been found include when the defendant knows of a prisoner's need for medical treatment but intentionally refuses to provide it, delays necessary medical treatment based on a non-medical reason, and prevents a prisoner from receiving needed or recommended medical treatment.[70]

---

[67] *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).
[68] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).
[69] *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979); *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa. 1996).
[70] *Id.*

In this matter, Plaintiff admits that he received treatment for his shoulder and related arm injuries. Plaintiff immediately received medical attention and timely x-rays, he received medication and a sling, he had numerous follow up appointments, pain injections, and a course of physical therapy. He was advised by multiple sources that he needed to try to rehabilitate his injuries with physical therapy, and the physical therapist encouraged him to continue to do his arm movement exercises. After the physical therapy did not adequately remedy Plaintiff's condition, he received an orthopedic consult with an outside doctor, where he received a cortisone shot and was advised to wait six to eight weeks to assess its efficacy on his condition. He was also advised that if it did not work, he would be scheduled for surgery.

All of these actions constitute a continued pattern of treatment for Plaintiff's medical condition. Although it is understandable that Plaintiff may prefer a certain course of treatment, such a disagreement with medical providers does not rise to the level of a constitutional violation. As the United States Court of Appeals for the Third Circuit has held, "mere disagreement as to the proper medical treatment" does not create an Eighth Amendment medical claim.[71] Put another way, when an inmate is provided with medical care and the dispute is over the adequacy of that care, an

---

[71] *See Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987).

Eighth Amendment claim does not exist.[72]  Notably, medical negligence and malpractice are also insufficient to state an Eighth Amendment claim.[73]

There are simply no allegations here that the Defendants intentionally refused to provide medical treatment, delayed treatment based on a non-medical reason, or prevented Plaintiff from receiving medical treatment.  Plaintiff alleges, at best, a typical medical negligence or malpractice claim.  As such, Plaintiff has failed to state an Eighth Amendment medical claim.

Generally, "plaintiffs who file complaints subject to dismissal . . . should receive leave to amend unless amendment would be inequitable or futile."[74]  Although it seems unlikely that Plaintiff can remedy the defects in his complaint, the Court will grant leave to amend in order to allow Plaintiff an opportunity do so.

### IV. CONCLUSION

Based on the foregoing, the motion to dismiss will be granted and the complaint dismissed, with leave to amend granted.  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[72] *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988).
[73] *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990) (citing *Estelle v. Gamble*, 429 U.S. 97, 106).
[74] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).